Memorandum of Decision
This is the sad and troubling case of Amber S. who, at age three and one-half, is now living with her fifth set of care takers. Pending before the court is the motion of Javier S., the respondent father, to revoke Amber's commitment to the custody of the Department of Children and Families (DCF). Hearings on this motion took place on June 16 and 17 and July 13, 14, and 16, 1999. For the reasons stated below, the court denies the motion but orders that DCF continue to make reasonable efforts to reunify Amber with the father.
BACKGROUND
Amber was born on December 21, 1995 to Javier S. and Crystal N. Early in the the mother's pregnancy, the father went to prison, where he remained until 1998. On March 26, 1996, DCF obtained an order of temporary custody of Amber after her mother, who had a significant psychiatric history, failed to administer Amber's prescribed medication. On May 10, 1996, the court adjudicated Amber neglected and committed her to DCF for one year.
DCF placed Amber in a nonrelative foster home, where she remained until November, 1997. At that time, DCF moved Amber to the residence of her paternal grandparents. DCF proposed to transfer guardianship to the paternal grandparents but the mother, Crystal N., objected and a contested treatment plan hearing took place. While the hearings were taking place, the mother filed a motion in court to transfer guardianship of Amber to her maternal great aunt and uncle, Amy and Timothy S., who lived in Vermont and who had been visiting Amber since May, 1997. Ultimately the Commissioner of DCF overruled the department's prior position and ordered that DCF transfer Amber to Amy and Timothy S.
Amber, then two and one-half years old, began living in Vermont with Amy and Timothy S. in June, 1998. In March, 1999, DCF filed its own motion to transfer guardianship to Amy and Timothy. Hearings in this court on the father's mother to revoke the commitment, which had been extended to May 10, 2000, and both motions to transfer guardianship began on June 16 and 17, 1999. The court granted Amy S. intervener status and she testified on June 16. CT Page 10548
On June 20, 1999, a startling development took place. In the middle of the night, Amy S. went to the home of her sister, Donna S., in Bristol, Connecticut, told her sister that she would no longer be able to keep Amber in her home, and left Amber with Donna S. Amy S. did not appear in court on June 21 and the court continued the case. When hearings resumed on July 13, Amy and Timothy S. were dismissed as parties and the motions to transfer guardianship were withdrawn. Testimony revealed that Amy S. had abandoned Amber because of marital difficulties in their home, because Amy had become frustrated with Amber's behavior, and because, on Sunday, June 20, Amy had slapped Amber in the cheek.
DISCUSSION
The motion to revoke commitment requires the father to prove by a preponderance of the evidence that the cause for commitment no longer exists. If he meets this burden, then DCF must prove by a preponderance of the evidence that it would not be in the best interest of the child to be returned to the father. See In reThomas L., 4 Conn. App. 56, 57, 492 A.2d 229 (1985); Practice Book § 33-10.
The father, now twenty-three years old, has a disturbing history of domestic violence, gang membership, drugs, and, in 1995, convictions for first degree robbery and second degree burglary. In prison, however, the father began to rehabilitate himself. He completed a parenting class, finished a level two drug addiction services program, obtained his high school diploma, and gained certification as a Braille transcriber. In February, 1998, the father was released into an alternate incarceration program and, in June, 1998, the father was released into the community on parole. Since his release, the father has abstained from further criminal behavior, has obtained and maintained steady employment, and has tested negatively for controlled substances. He has visited regularly with Amber since 1996, the visits have generally gone well, and a positive relationship exists. Several psychologists who examined the father found him to be capable of raising his daughter. The father is eligible to be discharged from parole in June, 2000.
Amber, who has had almost no normalcy in her life, is currently residing in a home with her maternal great aunt, Donna S., and Donna S.'s female domestic partner. This home was not originally chosen by DCF, but rather by Amy S. While Donna S. and her partner have rendered appropriate care to Amber, the court CT Page 10549 does not view any claim that they may eventually make to guardianship of Amber as taking precedence to a viable claim of a biological parent. See In re Kezia M., 33 Conn. App. 12, 22,632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993). The mother, Crystal N., however, is not an appropriate target of reunification efforts.[2] For these reasons, and because the father has made significant strides in his rehabilitation, the court finds that the father is currently the leading candidate for permanent custody of Amber.
There are, however, a number of causes for commitment of Amber that continue to exist. Among these are the lack of safe and sanitary conditions at the home of the father and the paternal grandparents, the exposure of Amber, who has asthma, to cigarettes when in the father's custody, and the father's occasional insensitivity to Amber's emotional needs, which are considerable given her current confused and traumatized state and occasional sexualized behaviors. There is also the risk, which has certainly diminished over time, that the father will relapse into his prior lifestyle of drugs and violence. Finally, the father lacks a plan for caring for both Amber and his new son, and for living with the boy's eighteen year old unmarried mother. Amber certainly does not need another confused, unstable household.
The father conceivably could have dispelled some of these reasons for commitment if he had testified, but he chose not to do so. The court cannot fully evaluate the father as a potential custodian if it does not hear and see him state his case. For all these reasons, the court finds that the respondent father did not meet his burden in seeking revocation of the commitment.
At the prior extension hearing, the court made no finding concerning whether it was appropriate for DCF to make reasonable efforts to reunify Amber with her biological parents, see General Statutes § 46b-129(k)(2), and instead reserved that issue for the hearing that this court just conducted. Based on the discussion above, the court finds that DCF should continue to make reasonable efforts to reunify Amber with her father but not her mother. Although DCF suggested that it would prefer to conduct an extensive psychological study to identify the leading candidate for custody of Amber, the court has already identified the father as that person. Ordering an additional psychological study in this case would just keep Amber in another transitional stage and delay the possibility that Amber could develop a permanent CT Page 10550 custodial relationship with her biological father. The court would suggest that the parties consider the issues discussed above and promptly agree on specific steps to meet the goal of reunification by the end of the current commitment. If the father, after having been given this additional opportunity to address the remaining barriers to reunification, does not make significant progress, then DCF will obviously have to consider some other permanency plan.
CONCLUSION
For the foregoing reasons, the court denies the motion to revoke the commitment, finds that reunification efforts with the father are appropriate, and orders the parties to submit specific steps for approval.
It is so ordered.
Carl J. Schuman, Judge Superior Court
[2] The mother did not visit Amber at all for periods of time in 1996, 1997, and 1998. In May, 1997, the mother moved to Vermont. Because of these facts, the mother currently has no relationship with Amber. In addition, the mother has made only minimal efforts to obtain counseling for substance abuse and parenting problems. She has also lost custody of a second child born through a different father.